*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OAK FLINT LLC,

     Plaintiff-Appellant,

v

CITY OF BERKLEY,

     Defendant-Appellee.

UNPUBLISHED
June 22, 2023

No. 362383
Oakland Circuit Court
LC No. 2022-192704-CZ

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition under MCR 2.116(C)(4), (7), and (8) in favor of defendant. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In 2019, plaintiff, Oak Flint LLC, purchased property located at 27723 Woodward Avenue in defendant City of Berkley, Michigan (the "City"). Plaintiff also entered into an agreement to purchase an adjacent parcel located at 27701 Woodward Avenue. According to plaintiff, the purpose of the purchase of 27723 Woodward and the agreement for the adjacent lot was to facilitate the operation of "a medical marijuana provisioning center and an adult-use marijuana establishment" within the City.

Under the Berkley City Code of Ordinances ("City Code"), a prospective marijuana business was required to be licensed by the state and the City. Thus, after obtaining prequalification for a state-issued license, plaintiff submitted an application with the City for a City-issued marijuana business license. The City Code limited the total number of licenses issued to three.

Because there were more than three license applications, the City engaged in a process to select applicants "best suited" to operate a marijuana business in the City. Although plaintiff believed it should have been "highly recommended" for a license, plaintiff's application was ultimately denied. One selection criterion highlighted prominently by plaintiff was the requirement that plaintiff's proposed development did not displace an existing operational business

-1-

in the City. According to plaintiff, it intended to comply with this requirement because the seller of the property it had an agreement with was going to relocate the business elsewhere. This assertion was documented in an affidavit purportedly signed by the existing business owner but, inadvertently, the affidavit was not included with plaintiff's application materials. The omission of the affidavit by plaintiff was not identified by the City when the City issued a "completeness check form" sent to applicants. Thus, when Matthew Baumgarten, the city manager ("City Manager"), scored plaintiff's license application, he awarded 0 of 22 points for the criterion that plaintiff's proposed business would not displace an existing business.

According to plaintiff, the City Manager's scoring process violated the Open Meetings Act ("OMA"), MCL 15.261 *et seq.* In separate proceedings in the trial court initiated by plaintiff and other license applicants whose applications were denied, *Yellow Tail Ventures, Inc v Berkley*, lower court case no. 20-184751-CZ ("*Yellow Tail Ventures*"), the trial court agreed and concluded that the City violated the OMA when it scored the applications. The trial court invalidated the scores and ordered that the City rescore the applications during an open meeting. The City Manager held a meeting at Berkley City Hall to rescore the applications in compliance with the trial court's order. Plaintiff received the same score as in the previous round of scoring and was not recommended by the City Manager to receive a license.

Plaintiff appealed the City Manager's decision to a hearing officer, who upheld the decision to deny plaintiff's application. During a January 18, 2022, the City Manager submitted his recommendations on licenses for the City Council's consideration. The City Council accepted the City Manager and hearing officer's recommendations and made a final decision to deny plaintiff's application for a license. Plaintiff subsequently filed a five-count complaint, alleging violations of the OMA, the City Ordinance, and the Marihuana Regulation and Taxation of Marihuana Act ("MRTMA"), MCL 333.27951 *et seq.*, denial of due process, and asserted a claim of appeal to the trial court concerning the denial of its license application.

In lieu of an answer, the City moved for summary disposition, asserting plaintiff failed to state a claim for an OMA violation and was barred under res judicata and collateral estoppel from asserting statutory claims The City also contended that the trial court lacked subject-matter jurisdiction to consider plaintiff's claim of appeal. The court agreed and granted the City's motion. This appeal followed.

## II. OPEN MEETINGS ACT

Plaintiff first argues the trial court erred when it concluded that plaintiff failed to state a claim under the OMA. We disagree.

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maple Manor Rehab Ctr, LLC v Dept of Treasury*, 333 Mich App 154, 163; 958 NW2d 894 (2020). The trial court granted summary disposition in the City's favor as to the OMA claim under MCR 2.116(C)(8), which states that summary disposition is appropriate when "[t]he opposing party has failed to state a claim on which relief can be granted." "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no

factual development could possibly justify recovery." *Maple Manor Rehab*, 333 Mich App at 162-163 (quotation marks and citation omitted). The plaintiff's factual allegations in the complaint must be taken as true, and the trial court may only consider the pleadings when making a decision on the motion. *Ass'n of Home Help Care Agencies v Dep't of Health and Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020).

This Court also reviews de novo questions of statutory interpretation. *Moore v Genesee Co*, 337 Mich App 723, 727; 976 NW2d 921 (2021). "If a statute is unambiguous, it must be applied as plainly written, and [the Court] may not read any unstated provisions into the statute." *Id*. at 728.

## B. ANALYSIS

Under the OMA, "[a]ll meetings of a public body shall be open to the public and shall be held in a place available to the general public." MCL 15.263(1), as amended by 2018 PA 485.[1] A "meeting" under the OMA is defined, in relevant part, as "the convening of a public body at which a quorum is present for the purpose of deliberating toward or rendering a decision on a public policy . . . ." MCL 15.262(b). All "decisions" of a public body must be made at a meeting open to the public. MCL 15.263(2). A "decision," in turn, is a "determination, action, vote, or disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy." MCL 15.262(d). Lastly, and except for exceptions not relevant here, "[a]ll deliberations of a public body constituting a quorum of its members must take place at a meeting open to the public." MCL 15.263(3).

This Court recently addressed the trial court's decision in *Yellow Tail Ventures* that the initial scoring of the applications by the City Manager violated the OMA. In *Yellow Tail Ventures, Inc v Berkley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 357654, 357666, & 358242), slip op at 8-9, we concluded that the trial court erred when it held that the City violated the OMA when it formed a "scoring committee" to score the applications. This was so because "[e]ven though the City manager was aided by other officials and staff, there was no delegation of decision-making duties to these persons." *Id*. at 8.

Quoting *Herald Co v Bay City*, 463 Mich 111; 614 NW2d 873 (2000), the Court distinguished the Michigan Supreme Court's holding in *Booth Newspapers, Inc v University of Michigan Board of Regents*, 444 Mich 211; 507 NW2d 422 (1993), a case plaintiff relies upon:

> "The important distinguishing feature of *Booth* was that the board was clearly a 'public body' that was subject to the OMA, and the various regents and subquorum groups had no independent authority to narrow the field, make a recommendation, or select a president. The board effectively sought to delegate its authority as a body subject to the OMA to various bodies of its own creation that it believed were

---

[1] Since the relevant time period of this case, MCL 15.263 has been amended several times. See 2020 PA 228; 2020 PA 254. None of the amendments are relevant to the issues in this case. Accordingly, we will refer to the current version of the statute in all subsequent citations.

not subject to the OMA, for the express purpose of avoiding the requirements of the OMA.

> Thus, the decision in *Booth* precluded an attempt by a public body to evade the OMA (and thus circumvent legislative intent) by delegating its authority. In this case, the city manager was assigned the task of recommending a new fire chief directly by the city charter, and, therefore, he required no delegation of authority from the city commission in order to perform that function. Under these circumstances, the Legislature, by electing not to include individuals in the definition of public body in the OMA, has exempted the city manager from its requirements." [*Yellow Tail Ventures, Inc*, ___ Mich App at ___; slip op at 9, quoting *Herald*, 463 Mich at 134-135.]

Thus, unlike in *Booth*, we held in *Yellow Tail Ventures, Inc* that "[t]here was no impermissible delegation of authority to the City manager" when he scored the applications because "the ordinance itself authorized the City manager to review the applications before sending them to the City council." *Yellow Tail Ventures, Inc*, ___ Mich App at ___; slip op at 9, citing City Ordinance § 30-806(f)-(h).[2] Importantly, as noted by the Court, "[t]he ultimate decision on which applications were approved was made by the City council, all in accordance with the OMA." *Yellow Tail Ventures, Inc*, ___ Mich App at ___; slip op at 9.

In addition to being binding precedent, MCR 7.215(C)(2), this Court's holding in *Yellow Tail Ventures, Inc* is law of the case. *Farish v Dep't of Talent and Economic Dev*, 336 Mich App 433, 449; 971 NW2d 1 (2021) ("The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that

---

[2] Those subsections of the City Code state:

> (f) Within 90 days of receiving the last completed application, *the city manager shall recommend applications* for site plan approval to the planning commission. The city manager may only recommend a number of applications for consideration equal to or less than the number of remaining licenses available for issuance. All other applicants shall be sent a written notice of rejection setting forth specific reasons why the city manager did not recommend their application for city council approval.

> (g) Upon receiving site plan approval from the planning commission, applicants shall move forward for final license *approval from the city council as recommended by the city manager*.

> (h) Upon submittal of the *city manager's recommended applications* to the city council, the city shall publish and provide public notice of the city council meeting when the city council will consider the license applications. Notice shall be given not less than 14 days prior to the city council meeting. All written feedback shall be presented to the city council. [City Code, § 30-806(f)-(h) (emphasis added).]

issue") (quotation marks and citation omitted). In its complaint, plaintiff alleged that the City violated the OMA when the City Manager scored the applications during an open meeting at which, plaintiff alleged, the City Manager did not speak but sat quietly while scoring. Plaintiff further alleged that the City Council "rubber stamped" the City Manager's recommendations without first openly deliberating on them. As in *Yellow Tail Ventures, Inc* and *Herald*, the City Manager did not violate the OMA when he scored the applications because he was not subject to the OMA nor was he acting under any delegation of authority from the City Council; rather, the City Manager was acting under his explicit duties set forth in the City Ordinance. See City Ordinance, § 30-806(f)-(h); see also *Pinebrook Warren, LLC v Warren*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket Nos. 355989, 355994, 355995, 356005, 356011, 356017, 356023, 359269, & 359285), slip op at 18-19 ("A body that can only make recommendations is not a governing body for purposes of the OMA because its authority does not include the power to effectuate or formulate public policy.").

Plaintiff's assertion that the City Council's act of "rubber stamping" the City Manager's recommendations was a violation of the OMA is similarly without merit. There is no claim that the City's Council's January 18, 2022 meeting was not open to the public. And plaintiff points to no authority under the OMA that public bodies must conduct a certain level of qualitative deliberation to pass muster. The OMA merely requires that when a public body makes a "decision," it does so during an open meeting. See MCL 15.263(2) ("All decisions of a public body must be made at a meeting open to the public.").

Because the City Manager was not himself subject to the OMA, and because he acted subject to his statutory authority to score the applications and make recommendations to the City Council, the trial court did not err when it concluded that plaintiff failed to state a claim that the City violated the OMA.

## III. RES JUDICATA

Next, plaintiff argues the trial court erred when it granted summary disposition in the City's favor because neither res judicata nor collateral estoppel bar its claims. According to plaintiff, the fact that the City was required to rescore the applications created a new cause of action that it could not assert in *Yellow Tail Ventures*. Again, we disagree.

## A. STANDARD OF REVIEW

The trial court granted summary disposition in the City's favor under MCR 2.116(C)(7) regarding plaintiff's claims concerning the MRTMA and City Ordinance. Under that court rule, summary disposition is proper "because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate or to litigate in a different forum, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action." MCR 2.116(C)(7).

> Under MCR 2.116(C)(7) (claim barred by prior judgment, i.e., res judicata), this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the

documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [*RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008) (citations omitted).]

## B. ANALYSIS

"The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *ER Drugs v Dep't of Health and Human Servs*, 341 Mich App 133, 142; 988 NW2d 826 (2022) (quotation marks and citation omitted); see also MCR 2.203(A) ("In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action . . . ."). The doctrine of res judicata

bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. [*Dep't of Environmental Quality v Sancrant*, 337 Mich App 696, 709; 976 NW2d 874 (2021) (quotation marks and citation omitted).]

There is no dispute between the parties that the first two elements are satisfied. The lower court's decision in *Yellow Tail Ventures* resulted in a final order, and plaintiff and the City were both parties to that action. Thus, the question in this case is whether the issues raised in plaintiff's complaint were or should have been raised in that case. See *Sancrant*, 337 Mich App at 709.

In Count II of plaintiff's complaint, plaintiff alleged that "[t]he procedure used by the City Manager and his resulting decision-making was not 'a competitive process' intended to select the 'best suited' applicant to operate in compliance with MRTMA" because the City Manager did not give plaintiff a full score for displacement of existing businesses and did not notify plaintiff that the affidavit was missing. The fact that the plaintiffs raised different claims in *Yellow Tail Ventures*—i.e., that the scoring criteria itself was inconsistent with the MRTMA—does not save plaintiff's claims. Res judicata bars not only claims that were actually litigated, but also claims that it could have but did not litigate. *Sancrant*, 337 Mich App at 709. The claims in Count II were known to plaintiff when it filed suit in *Yellow Tail Ventures*. At the time that complaint was filed, the City Manager had already (1) failed to notify plaintiff that the affidavit had not been included with the application; and (2) did not give plaintiff any points for displacement of existing businesses. Thus, plaintiff could have but did not raise those issues in *Yellow Tail Ventures* and res judicata bars their subsequent litigation.

The same is true for Count III of plaintiff's complaint. There, plaintiff alleged the City violated the City Ordinance by "failing to apply the scoring criteria in an objective and consistent manner, fail[ing] to obtain sufficient up to date information from applicants . . . , requiring Plaintiff

to submit secondary affidavits supporting the sworn facts in its Application and failing to notify Plaintiff of the omission of [the affidavit]." Like in Count II, these claims relate to issues known to plaintiff at the time *Yellow Tail Ventures* was filed in the trial court. Plaintiff received the same score from the City Manager in the first attempt at scoring as it did in the second. Thus, the same criteria were used, whether they were "objective and consistent" or not. And, in both rounds of scoring, the City allegedly did not obtain up to date information because it did not notify plaintiff the affidaivt was missing. Accordingly, like Count II, plaintiff's claims in Count III could have but were not asserted in *Yellow Tail Ventures*.[3]

Because the doctrine of res judicata barred plaintiff's claims that the City violated the MRTMA and the City Ordinance when it scored plaintiff's application, the trial court did not err when it granted summary disposition in the City's favor.

## IV. CLAIM OF APPEAL

Lastly, plaintiff contends the trial court erred when it dismissed plaintiff's claim of appeal for lack of subject-matter jurisdiction. We disagree.

### A. STANDARD OF REVIEW

"MCR 2.116(C)(4) permits a trial court to dismiss a complaint when the court lacks jurisdiction of the subject matter." *Southfield v Shefa, LLC*, 340 Mich App 391, 406; 986 NW2d 607 (2022). "When viewing a motion under MCR 2.116(C)(4), this Court must determine whether the pleadings demonstrate that the defendant was entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact." *Weishuhn v Catholic Diocese of Lansing*, 279 Mich App 150, 155; 756 NW2d 483 (2008) (quotation marks and citation omitted).

### B. ANALYSIS

Claims of appeal to the circuit court are governed by MCR 7.100, *et seq*. An aggrieved party has an appeal of right to the circuit court from

---

[3] The City also argued in the trial court and this Court that collateral estoppel bars plaintiff's claims. For collateral estoppel to apply, the City was required to show: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Sancrant*, 337 Mich App at 707 (quotation marks and citation omitted). We disagree that collateral estoppel would bar plaintiff's claims. In *Yellow Tail Ventures*, the plaintiffs alleged that the City Ordinance's scoring system violated the MRTMA. While this case also involves the City Ordinance and MRTMA, plaintiff's claims are not related to whether the former violates the latter, but rather whether the City violated both schemes when it improperly scored plaintiff's application. That issue of fact was not decided in *Yellow Tail Ventures* and, therefore, collateral estoppel does not apply. See *Sancrant*, 337 Mich App at 707.

(1) a final judgment or final order of a district or municipal court, except a judgment based on a plea of guilty or nolo contendere;

(2) a final order or decision of an agency governed by the Administrative Procedures Act, MCL 24.201 et seq.; and

(3) a final order or decision of an agency from which an appeal of right to the circuit court is provided by law. [MCR 7.103(A)(1)-(3).]

There is no dispute that plaintiff's claim of appeal does not concern a final judgment from a (1) district or municipal court, or (2) agency governed by the Administrative Procedures Act. Thus, the threshold question is whether plaintiff's claim of appeal was a final order "from which an appeal of right to the circuit court is provided by law." Under Const 1963, art 6, § 28, an aggrieved party may seek review from

All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are *judicial or quasi-judicial* and affect private rights or licenses . . . . [Emphasis added.]

Thus, if plaintiff's claim of appeal relates to a final order of an administrative officer or agency that is judicial or quasi-judicial, the trial court would have subject-matter jurisdiction to entertain it.

Plaintiff's reliance on Const 1963, art 6, § 28, is misplaced. The license application process was not adversarial in nature. In *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 86; 832 NW2d 288 (2013), this Court explained that not all government "actions are taken in a judicial or quasi-judicial capacity." Thus, "[t]o determine whether an administrative agency's determination is adjudicatory in nature, courts compare the agency's procedures to court procedures to determine whether they are similar." *Id*. "Quasi-judicial proceedings include procedural characteristics common to courts, such as a right to a hearing, a right to be represented by counsel, the right to submit exhibits, and the authority to subpoena witnesses and require parties to produce documents." In its simplest form, the City Ordinance required applicants to submit written narratives, materials, and fees to be considered for a license. The applications would be scored on the basis of those submissions and those scores would be submitted to the City Council for final decision. The City Council was not obligated to rely on those scores nor obligated to issue any licenses at all. There was nothing inherently quasi-judicial about the application process, such as the right to present or examine witnesses, submit exhibits, or conduct a hearing in front of a neutral party. Instead, applications were submitted and considered by the City Council in a public meeting. In fairness to plaintiff, the process below did involve an appeal of the City Manager's scores to a hearing officer, which arguably contained aspects of a quasi-judicial proceeding. But even if the appeal hearing was "quasi-judicial," the hearing officer had no authority to issue a final decision—i.e., approve or deny plaintiff's application—and plaintiff does not argue otherwise. That decision rested with the City Council, which, as explained above, did not act as a judicial or quasi-judicial agency. See *id*.

Because plaintiff's claim of appeal was not proper under MCR 7.103(A)(3) as it was not from "a final order or decision of an agency from which an appeal of right to the circuit court is

provided by law," the circuit court lacked subject-matter jurisdiction to consider it. Thus, the trial court did not err when it granted the City's motion for summary disposition.

Affirmed. The City, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly